AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

    vs.

MICHAEL GALLON

**CRIMINAL COMPLAINT**

CASE NUMBER: 8:13MJ 1719 TBM

       I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.   From at least October 2012 until the present, in Polk County, in the Middle District of Florida, defendant MICHAEL GALLON was involved in,

       Sex Trafficking of a Minor and Production of Child Pornography

in violation of Title 18, United States Code, Section(s) 1591(a)(1) and 2251.   I further state that I am a Task Force Officer with Homeland Security Investigations and that this Complaint is based on the following facts:

                SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Signature of Complainant
BILLY LANE

Sworn to before me and subscribed in my presence,

| October 23, 2013 | at | Tampa, Florida |
|---|---|---|
| THOMAS B. McCOUN, III<br>United States Magistrate Judge<br>Name & Title of Judicial Officer | | <br>Signature of Judicial Officer |

Complaint.docx

## AFFIDAVIT

I, Billy Lane, depose and state the following:

1.      Your Affiant is a full time police detective with the Lakeland, Florida,
Police Department and is assigned to the Special Investigations Section which
involves the state investigation of crimes to include narcotics and vice crimes.  Your
Affiant has been employed as a police detective with the Lakeland Police
Department for 16 years.

2.      Your Affiant is a Task Force Officer with the United States Department
of Homeland Security (DHS) Homeland Security Investigations (HSI) and has been
since June 13, 2012. Your Affiant is currently assigned to the Office of the Special
Agent in Charge, Tampa, Florida.

3.      As a Task Force Officer with HSI, your Affiant has completed
mandatory training, which certified him as a federal criminal investigator.  Your
Affiant has also been directly involved in federal investigations and has assisted
other agents in conducting investigations which involved human trafficking and the
production of child pornography.

4.      As a Task Force Officer with HSI, your Affiant is cross designated as a
federal law enforcement officer as described in Title 19, United States Code, Section
1401(i) under the Blue Lightning program.  As such, your Affiant is responsible for
investigating and enforcing violations of federal law and is assigned to a group
responsible for investigating matters involving the exploitation of children, particularly

1

in relation to violations of Title 18, United States Code, Section 1591, which

criminalizes sex trafficking of juveniles.

5.     As a Police Detective, your Affiant has completed the mandatory state

police academy, which certified him as a police officer.  Your Affiant has a vast

knowledge of computer and cellular forensics, as well as computer related crimes,

including child pornography.  Your Affiant has received specialized training in the

area of computer forensics and your Affiant is a certified Forensic Computer

Examiner through The International Association of Computer Investigative

Specialists.

6.     This affidavit is submitted for the purpose of obtaining a criminal

complaint against Michael GALLON for violations of Title 18, United States Code,

Sections 1591(a)(1) and 2251, sex trafficking of a minor and production of child

pornography, respectively.

7.     Because this affidavit is being submitted for the limited purpose of

obtaining a criminal complaint, I have not included each and every fact known to me

concerning this investigation. I have set forth only the facts that I believe are

necessary to establish probable cause to charge Michael GALLON with violations of

the federal charges of 18 U.S.C. §§ 1591(a)(1) and 2251.

## STATUTORY AUTHORITY

8.     Title 18, United States Code, Section 1591(a)(1), makes it a federal

crime to engage in sex trafficking activities using minors.  That section makes it a

crime for a person to:

> knowingly in or affecting interstate or foreign commerce, or within the
> special maritime and territorial jurisdiction of the United States, recruit,
> entice, harbor, transport, provide, obtain, or maintain by any means a
> person; knowing, or in reckless disregard of the fact, that means of
> force, threats of force, fraud, coercion, described in subsection (e)(2)
> or any combination of such means will be used to cause the person to
> engage in a commercial sex act, or that the person has not attained
> the age of 18 years and will be caused to engage in a commercial sex
> act, shall be punished as provided in subsection (b).

9.     Title 18, United States Code, Section 2251(a), makes it a federal crime

to produce child pornography.  It states as follows:

> Any person who employs, uses, persuades, induces, entices, or
> coerces any minor to engage in, or who has a minor assist any other
> person to engage in, or who transports any minor in or affecting
> interstate or foreign commerce, or in any Territory or Possession of the
> United States, with the intent that such minor engage in, any sexually
> explicit conduct for the purpose of producing any visual depiction of
> such conduct or for the purpose of transmitting a live visual depiction of
> such conduct....if such person knows or has reason to know that such
> visual depiction will be transported or transmitted using any means or
> facility of interstate or foreign commerce or in or affecting interstate or
> foreign commerce or mailed, if that visual depiction was produced or
> transmitted using materials that have been mailed, shipped, or
> transported in or affecting interstate or foreign commerce by any
> means, including by computer, or if such visual depiction has actually
> been transported or transmitted using any means or facility of
> interstate or foreign commerce or in or affecting interstate or foreign
> commerce or mailed. Any person who, employs, uses, persuades,
> induces, entices, or coerces any minor to engage in, or who has a

minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, shall also be punished.

## SUMMARY OF INVESTIGATION

10.    In or around the month of October 2012, a Lakeland Police Department detective informed HSI of a tip regarding a potential human trafficking case. Additionally, the Florida Department of Law Enforcement (FDLE), informed HSI that they had interviewed several minor victims (that is, girls under the age of 18) who claimed to have been prostituted by Michael GALLON who resides in Lakeland, Florida. FDLE's investigation indicated that GALLON transported minor and adult females to various locations in Florida and across state lines to prostitute at private parties, to include bachelor parties. Based on this information, HSI opened a human trafficking investigation and identified several victims residing in the Middle District of Florida.

## VICTIM 1

11.    Between December 21, 2012, and August 28, 2013 law enforcement interviewed a minor victim, J.L. (hereafter referred to as "V1"). During the interviews, V1 relayed, among other things, the following information:

(a)    V1 stated that she was prostituted by GALLON when she was 16 years old.

(b)    During the month of February 2012, V1's friend asked her to accompany her to work for GALLON on an out-of-town weekend trip. V1 agreed to go on the trip because her friend was nervous about going alone. On the following

4

Thursday evening, GALLON picked V1 up in a black Mercedes-Benz, along with several other females.  GALLON asked her how old she was and she told him 16 years old.  GALLON told her that if anybody asks her age she is to tell them she is 18.  GALLON transported V1 and the other females in his vehicle to his residence, located at 1938 Crystal Grove Drive, Lakeland, Florida 33801 (hereafter referred to as "his residence").  Over the course of the night, 9 to 10 other females arrived at his residence.

   (c) The following morning, GALLON left his residence and went to the bank. He returned with hundreds of dollars in single dollar bills.

   (d) V1 recalled seeing a laptop computer at his residence and stated that GALLON used the computer to store photographs of females that prostituted for him.

   (e) The following day, GALLON transported V1 and several other females from his residence in Lakeland, Florida, to Lake City, Florida.  On the way to Lake City, GALLON stopped in other locations, like Gainesville, and picked up additional females.

   (f) When they arrived in Lake City, GALLON drove them to a party that he had previously arranged.  The party was held at a co-conspirators house located on North East Saint Clair Street in Lake City, Florida.  There were several older males at the party.  The females that GALLON brought, some of whom were under the age of 18, removed their clothing and began to dance in a sexual manner.  The men at the party paid the girls dancing with tips.  Additionally, there were "VIP" rooms, where the girls engaged in commercial sex acts with the men at the party.

(g)     GALLON charged the men around $10.00 or $20.00 at the door to enter the party.  If a man wanted to have sex with one of the girls, he had to pay GALLON around $30.00 to take the girl into a VIP room.  Additionally, the girl also had to pay GALLON around $30.00 to use the VIP room to engage in prostitution acts with

the men.  While in the VIP room, the girls charged the men a separate fee for sexual acts, a portion of which the girls had to pay to GALLON.  GALLON instructed the girls on what amounts to charge for various sexual acts.  V1 did not prostitute during the party.

(h)     After the party, GALLON drove the girls to a co-conspirators house located on North East Colorado Terrace in Lake City in Florida, to sleep for the night.

(i)     That night, a male subject came to the property where they were sleeping and offered GALLON money to have sex with V1.  V1 told GALLON that she did not want to prostitute. GALLON yelled at her, physically threatened her, and told her he would leave her alone in Lake City if she did not prostitute. As a result, V1 prostituted for GALLON with an unknown male that night.

(j)     V1 continued to prostitute for GALLON, mostly on the weekends, for several months because he convinced her that he cared about her and that she was special to him.

(k)     Most of GALLON's prostitution parties that V1 worked occurred in Lake City, Florida.  Men at the parties often sold narcotics to GALLON, which GALLON

resold to the girls prostituting for him.  The narcotics included cocaine, marijuana, and various types of pills, to include ecstasy (MDMA).

(l)     While V1 was working for GALLON, he would invite her over to his residence before an out of town trip, so that he could have sex with her.

(m)     GALLON's residence was a gathering spot for the females that prostituted for him.  GALLON typically left Lakeland on Fridays to travel to prostitution parties in other locations.  Many of the girls working for him were told to spend Thursday night at his residence to ensure GALLON had everyone together in one location prior to leaving.

(n)     During the months that V1 worked for GALLON in 2012, there were several occasions that, in addition to the weekend prostitution events, she also worked "licks" for him.  "Licks" was the name that GALLON used to describe when he arranged for a female to be prostituted to a man on a one-on-one basis, outside of a party.  V1 advised that she did several "licks" for GALLON.  On some instances when she did a "lick" for GALLON, she would go to his residence.  GALLON would then drive her to a location to meet with the man paying to have sex with her and drop her off.  After they were done having sex, the customer would drive her back to her own house.  V1 typically received none of the money the customer paid GALLON.

(o)     V1 estimated that while prostituting for GALLON she had sex with approximately thirty to forty men.

7

(p)     V1 identified GALLON from a photographic line-up containing

photographs of six similar looking individuals.  V1 also identified a photograph of

GALLON's residence.

(q)     V1 identified several other victims/witnesses that worked for GALLON

from photographs.

(r)     Law enforcement found text messages between V1 and GALLON on

V1's cellular telephone.  The text messages corroborated V1's statements.  Some of

the text messages are as follows:

> **GALLON to V1:** "Attn all dancers we have just been booked for a
> show in Kentucky on nov tenth we will do a show that Friday before we
> leave more details this weekend at the Halloween party"

> **V1 to GALLON:** "I'm mad I suppose to slept with u tonight Mike..y u
> made me come lol…n how much money he gave u for me"

> **GALLON to V1:** "Yes he paid you good to ahead see you ithe am"

> **V1 to GALLON:** "OK n he bringing me bk in a half hour cuz he stay wit
> his GRANDparents n they a be getting up in a lil."

(s)     Law enforcement asked V1 about the meaning of the text messages

between her and GALLON.  V1 explained, that while prostituting for GALLON, she

sent the text message while she was with a "client."  In the text message, V1 asked

GALLON if the client had already paid before she had sex with him.  GALLON

confirmed payment then said he would see her in the morning, because she was

expected to spend the night with the client.  V1 advised that she asked about

sleeping with GALLON because GALLON previously told her to sleep in his bedroom that night.

## VICTIM 2

12.     On January 25, 2013, law enforcement interviewed a minor victim, T.R. (hereafter referred to as "V2"). During the interview V2 relayed, among other things, the following information:

(a)     V2 stated she was prostituted by GALLON when she was 16 years old.

(b)     V2 advised that she met GALLON around March or April 2012 at a gas station in Lakeland, Florida. GALLON offered V2 a job dancing and told her to get into his vehicle, which V2 described as an expensive looking black sedan. V2 stated that she told GALLON she was 16 years old and he told her to say she was 18 years old if anyone asked.

(c)     GALLON transported V2 to his residence. V2 stated that once they entered his residence, GALLON ordered her to take off her clothes because he needed to see what she looked like before she could dance for him. V2 reluctantly agreed and took off her outer garments. GALLON then told her she had to take off all of her clothes and V2 complied. GALLON took off his pants and rubbed his genitals on her. He told V2 he needed a "sample" before she could work for him. V2 would not have sex with GALLON, so he drove her home.

(d)     A few days later, on a Thursday evening, in or around March or April 2012, GALLON picked V2 up in his vehicle and transported her to his residence. V2 observed approximately 13 other girls at the residence and approximately 5 of them,

9

in addition to V2, were minors. All the females slept at GALLON's residence and the next day they all traveled to Pensacola, Florida, for a prostitution event.

(e)     V2 advised that most of the females prostituted during the out of town weekend trip with GALLON. GALLON also performed sexual acts with another female in front of V2 because she refused to have sex with him.

(f)     Over the next few weeks, V2 worked at approximately 10-12 prostitution events for GALLON where she prostituted approximately 25 times.

(g)     V2 identified GALLON from a photographic line-up containing photographs of six similar looking individuals. V2 also identified a photograph of GALLON's residence.

(h)     V2 identified several other victims/witnesses that worked for GALLON from photographs.

(i)     Law enforcement found text messages between V2 and GALLON on V2's cellular telephone. The text messages corroborate V2's statements.

## VICTIM 3

13.     On January 30, 2013, and February 14, 2013, law enforcement interviewed a minor victim, M.D. (hereafter referred to as "V3"). During the interview V3 relayed, among other things, the following information:

(a)     V3 met GALLON around July 2012, when she was 15 years of age and subsequently prostituted for him.

**10**

(b)     V3 went to his residence. GALLON instructed her to remove all of her clothing, which she did. GALLON then instructed V3 to pose naked in various sexual poses while he took pictures with his cellular telephone. V3 allowed GALLON to take the photographs. When GALLON finished taking the photographs, they left his residence and GALLON dropped her off.

(c)     A few days later she traveled out of town with GALLON to work at one of his prostitution events. V3 traveled out of town with GALLON for several weeks for the purpose of prostitution.

(d)     During the interview, V3 identified GALLON from a photographic line-up containing photographs of six similar looking individuals.

(e)     V3 identified several other victims/witnesses that worked for GALLON from photographs.

## VICTIM 4

14.     On September 16, 2010, and February 21, 2013, law enforcement interviewed minor victim, T.H. (hereafter referred to as V4). During the interviews, V4 stated, among other things, the following information:

(a)     V4 met GALLON in February 2009 when she was 14 years of age and prostituted for him for several months.

(b)     V4 met GALLON at a talent show he organized in Lake City through one of his corporations. GALLON attracted young people to enter the talent show by providing a cash prize. V4 entered the talent show as a contestant and was

11

approached by GALLON. He commented on her physical beauty and asked her to join his dance group to which she agreed.

(c)     Once GALLON convinced V4 to accompany him out of town, he was able to pressure her into prostituting for him at private parties. V4 prostituted for GALLON numerous times between the months of February 2009 and September 2010 when V4 was 14 and 15 years old. GALLON profited from her prostitution by taking a portion of whatever she earned.

(d)     On February 15, 2013, in the presence of law enforcement, V4 made a consensually recorded telephone call to GALLON. During the call GALLON and V4 discussed how she worked for him several years ago (when she was under the age of 18). GALLON also asked V4 if she had been speaking to law enforcement.

(e)     V4 identified GALLON from a photographic line-up containing photographs of six similar looking individuals.

(f)     V4 identified several other victims/witnesses that worked for GALLON from photographs.

**VICTIM 5**

15.     On June 10, 2013, law enforcement interviewed minor victim, Y.C. (hereafter referred to as V5). During the interviews, V5 stated, among other things, the following information:

(a)     V5 met GALLON around June/August of 2012 when she was 16 years old. V5 met GALLON through another minor victim that was friends with V5.

(b)     V5 prostituted for GALLON for several months and had sex with more than 15 men.

(c)     GALLON instructed V5 to fill out an employment contract for him and to lie about her age on the contract.  Law enforcement recovered the contract during a search warrant of GALLON's residence.

(d)     GALLON prostituted V5, along with other females that were working for him at the time, in cities around Florida and in Kentucky.

(e)     V5 identified GALLON from a photographic line-up containing photographs of six similar looking individuals.

(f)     V5 identified several other victims/witnesses that worked for GALLON from photographs.

### SEARCH WARRANTS

16.     On May 3, 2013, law enforcement executed Federal search warrants on GALLON's residence, vehicles, cellular telephone, and a co-conspirators residence.  The following is some of the relevant evidence that was discovered and seized:

(a)     Notes –Law enforcement seized hand written notes from GALLON's vehicle, a Lincoln Navigator, and from within his master bedroom.  The notes detail the names of the females working for GALLON.  A few of the identified minors' names were listed in these notes.  The notes also detail fines/fees that GALLON charges the females.  The fines/fees include gasoline fees, room fees, and "tip out" fees.  Throughout the course of this investigation, law enforcement determined that

13

"tip out" fees are fees that GALLON charges the females for handling the money they earn during his shows. However, GALLON waives the fee if the female earns money for him by prostituting at the party.

(b)     Lap top computer – Law enforcement located a laptop computer in the family room of GALLON's residence. GALLON admitted to owning the computer. A forensic review of the laptop computer revealed several photographs of females in sexually suggestive poses and clothing. Law enforcement identified at least one minor victim dressed in sexually suggestive clothing. A follow up interview with the minor victim, confirmed that the photograph was taken by GALLON while she was working at one of GALLON's shows in Madison, Florida.

(c)     Contracts – Law enforcement discovered employment contracts between GALLON and several females that worked for him. The contracts were located in a spare bedroom in GALLON's residence and in GALLON's Mercedes-Benz. At least one of the contracts belonged to an identified minor victim. During an interview with the minor victim, the minor victim advised law enforcement that GALLON instructed her to fill out the contract and to lie about her age so that it appeared as if she was an adult.

(d)     Cellular Telephone – Law enforcement seized GALLON's cellular telephone from the master bedroom of his residence. The search of GALLON's cellular telephone uncovered dozens of photographs of females that law enforcement believes work or worked for GALLON. Many of the females are naked

or in sexually suggestive clothing.   At least one photograph depicts a naked minor victim.

      (i)     The child pornographic image depicts a 16 year old black female, sitting on a chair, completely nude, with her legs spread.  The focal point of the photograph are the minor victim's breast and open vagina.

      (ii)    The minor victim identified herself in the child pornographic photograph and advised that the picture was taken during a show she worked for GALLON in Deland, Florida.

      (iii)   A forensic examination of the cellular telephone, revealed that GALLON forwarded the child pornographic picture, via text, to other cellular telephone numbers.

      (iv)   GALLON's cellular telephone contained text messages between him and the females he employed as well as text messages between him and clients.  For example:

> **GALLON to "JEFF BASS COUSIN":** (after previously sending several text photographs of girls that GALLON deemed not attractive) "That's the girls you guys are gonna get if you wait to the last minute"

> **"JEFF BASS COUSIN" to GALLON:** "I told him da deal…its on him"

> **GALLON to "JEFF BASS COUSIN":** "Thanks cause I don't want to have to bring them the last minute crew cause they ready to lick ass and suck balls all nite but they don't have the look to make a nigga dick get hard"

15

## INTERVIEW WITH GALLON

17.     On May 3, 2013, law enforcement officers conducted a Post-Miranda consensual interview with Michael GALLON.  After initially denying any involvement with prostitution; GALLON admitted to the following:

(a)     GALLON admitted to profiting from transporting females to different cities on the weekends to engage in prostitution.

(b)     GALLON admitted to prostituting females for over 10 years.

(c)     GALLON admitted to setting up "VIP" rooms at parties that he organized.  GALLON admitted that the VIP rooms are where the females that work for him prostitute.  GALLON said he earns a fee from the man and the female for using the VIP room for prostitution.

(d)     GALLON admitted to engaging in the same activities as a "pimp."

(e)     GALLON admitted to bringing females he hires to his residence for an "audition" where he tells them to remove their clothing.

(f)     GALLON admitted to hiring a female to work for him that lived at "Pleasant Place" – a shelter in Gainesville, Florida, for pregnant and parenting teens who may be victims of abuse or neglect.

(g)     GALLON was shown several photographs of victims that law enforcement discovered throughout the course of the investigation.  The victims prostituted for GALLON when they were under the age of 18.  After being shown their photographs, GALLON identified more than 5 of the victims by name.  GALLON admitted that V1, V2, V3, and V4 worked for him and that he transported them to the

parties he arranged. GALLON specifically recalled that V1 and V4 prostituted for him in "VIP" rooms at his parties. He also recalled that a client in Jacksonville, Florida, paid him to take naked photographs of V3. GALLON could not recall if V2 or V3 prostituted at any of his parties. GALLON also admitted to transporting V3 to approximately 2 parties, including one in West Palm Beach, Florida, after he discovered she was under the age of 18.

## INTERSTATE NEXUS

18.    Law enforcement has discovered evidence throughout the course of the investigation that GALLON affected interstate commerce during violation of the said charges. Some of the evidence is as follows:

(a)    Kentucky Show– Interviews with victims and witnesses confirm that GALLON transported females, including at least one minor victim, from Florida to Kentucky with the intent to engage in prostitution. Law enforcement obtained hotel information from a Best Western Inn located in Barbourville, Kentucky, that corroborates the statements of victims and witnesses. Additionally, a text message discovered on V1's cellular telephone, from GALLON, confirms this information.[1]

(b)    Cellular Telephones – Cellular telephones were utilized by GALLON and the victims to communicate. Law enforcement has confirmed that the Samsung cellular telephones utilized by V1 and V2 were manufactured outside of the United States. Additionally, the Apple iPhone used by GALLON was manufactured outside of the state of Florida.

---

[1] The content of the text message is detailed in paragraph 11 subparagraph (r).

## CONCLUSION

19.     Based upon the foregoing, your Affiant submits that there is probable

cause to charge Michael GALLON with violations of Title 18, United States Code,

Sections 1591(a)(1) and 2251, sex trafficking of a minor and production of child

pornography, respectively.

Billy Lane
Lakeland Police Department Detective
Homeland Security Investigations
Task Force Officer

Sworn to and Subscribed in my Presence
this 2 5 day of October, 2013.

THOMAS B. McCOUN, III
United States Magistrate Judge